# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

**JEFFREY LYNN WATSON**,                  Case No. 3:18 CV 2190

    Plaintiff,

    v.                                        Magistrate Judge James R. Knepp II

**NORFOLK SOUTHERN RAILWAY CO.**,

    Defendant.                      MEMORANDUM OPINION AND ORDER

## INTRODUCTION

On September 24, 2018, Plaintiff Jeffrey Lynn Watson ("Plaintiff") brought this action against Norfolk Southern Railway Company ("Defendant"), under the Federal Employers' Liability Act ("FELA") alleging he sustained workplace injuries resulting from Defendant's negligence. *See generally* Doc. 1 (Complaint). On April 17, 2019, Plaintiff filed his First Amended Complaint. (Doc. 16). Pending before the Court is Plaintiff's Motion for Leave to File a Second Amended Complaint (Doc. 28), in which he seeks to add negligence *per se* claims based on alleged violations of 49 C.F.R. § 220.47 and 49 C.F.R. § 272 *et seq*. Defendant opposes *only* the addition of a claim based on 49 C.F.R. § 272 *et seq.*, arguing futility. (Doc. 31, at 2)[1].

For the reasons discussed herein, Plaintiff's motion for leave to amend (Doc. 28) is granted in part and denied in part.

---

1. Defendant notes expressly that it does not oppose permitting Plaintiff to add a negligence *per se* claim based on 49 C.F.R. § 220.47. (Doc. 31, at 2 n.1).

## BACKGROUND

At all times relevant herein, Plaintiff was employed by Defendant as a locomotive engineer. (Doc. 16, at ¶2). On November 29, 2015, he was operating a locomotive engine in Fostoria, Ohio in an area known as the "Iron Triangle". *Id*. ¶6. The "Iron Triangle" is a section of railroad known for its numerous intersecting tracks, or "diamonds". *Id*. at ¶7. Plaintiff's train was eastbound on track 1-Main; he had just cleared a diamond and was traveling around a curve approaching a second. *Id*. at ¶9. Plaintiff's train had a green signal to proceed through the second diamond. *Id*. At the same time, a northbound CSX train approached the same diamond with a red signal. *Id*. at ¶10. Plaintiff saw the CSX train approaching and realized it was not braking. *Id*. at ¶11. Plaintiff, reasonably fearing a collision, activated his train's emergency brake and braced for impact. *Id*. at ¶13. The CSX train also activated its emergency brake, and a collision was "narrowly avoided". *Id*. at ¶14. Plaintiff asserts he sustained mental and emotional injuries as a result of the incident. *Id*. at ¶17.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 15(a)(2), a court should grant leave to amend "when justice so requires". As the Sixth Circuit has noted, Rule 15(a) "reinforces the principle that cases 'should be tried on their merits rather than the technicalities of the pleadings.'" *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986) (quoting *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982)); *see also Inge v. Rock Finance Corp.*, 368 F.3d 930, 937 (6th Cir. 2004). Factors to consider include an undue delay in filing, lack of notice to the opposing party, bad faith, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of the amendment. *Seals v. Gen. Motors Corp.*, 546 F.3d 766, 770 (6th Cir. 2008). An amendment is futile if it could not withstand a Federal Rule 12(b)(6) motion to dismiss. *See, e.g.*, *Brown v. Owens*

*Corning Inv. Review Comm.*, 622 F.3d 564, 574 (6th Cir. 2010) (citing *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000)); *Crutcher v. Court Psychiatric Clinic*, 2017 WL 5514812, at *2 (6th Cir.) ("Accordingly, Crutcher's proposed amended complaint could not have survived a Rule 12(b)(6) motion to dismiss, and the district court properly denied her leave to amend on the basis of futility."). A complaint cannot survive a Rule 12(b)(6) motion to dismiss, if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Although no single factor is dispositive, a finding of futility is usually fatal to a request for leave to amend a complaint." *Lipa v. Asset Acceptance, LLC*, 572 F. Supp. 2d 841, 855 (E.D. Mich.) (citing *Miller v. Calhoun Cty.*, 408 F.3d 803, 817-18 (6th Cir. 2005)).

## DISCUSSION

Plaintiff seeks to amend his complaint to include a claim that Defendant was negligent *per se* for its failure to comply with 49 C.F.R. § 272 *et seq.*, which requires railroads to implement a Critical Incident Stress Plan for certain circumstances. *See* Doc. 28, at 1, Doc. 28-2, at 4. Defendant counters that such an amendment would be futile because the incident at issue is, by definition, not a "critical incident" under the regulations, and thus Plaintiff cannot state a claim based on 49 C.F.R. § 272 *et seq.* upon which relief could be granted. (Doc. 31-1, at 2-3). For the reasons discussed herein, the Court agrees with Defendant and denies Plaintiff's motion for leave to amend to include a negligence *per se* claim based on 49 C.F.R. § 272 *et seq.* (Doc. 28).

The purpose of a critical incident stress plan is "to promote the safety of railroad operations and the health and safety of railroad employees, especially those who are directly involved in a critical incident[.]"49 C.F.R. § 272.1. Railroads are required to adopt a written critical incident plan which must be approved by the Federal Railroad Administration. 49 C.F.R. § 272.5. The plan

must cover individuals employed by the railroad who are directly involved in a "critical incident".

49 C.F.R. § 272.7. The regulations define what constitutes a "critical incident", which is either:

> (1) An accident/incident reportable to FRA under part 225 of this chapter that results in a fatality, loss of limb, or a similarly serious bodily injury; or
>
> (2) A catastrophic accident/incident reportable to FRA under part 225 of this chapter that could be reasonably expected to impair a directly-involved employee's ability to perform his or her job duties safely.

49 C.F.R. § 272.9. A "directly-involved employee" is a covered railroad employee:

> (1) Whose actions are closely connected to the critical incident;
>
> (2) Who witnesses the critical incident in person as it occurs or who witnesses the immediate effects of the critical incident in person; or
>
> (3) Who is charged to directly intervene in, or respond to, the critical incident (excluding railroad police officers or investigators who routinely respond to and are specially trained to handle emergencies).

*Id*.

As Defendant points out, a "near miss" does not fit within the regulatory definition of a "critical incident". (Doc. 31, at 2-3). Defendant notes that "near misses" were contemplated, but ultimately not included in the "critical incident" definition. *Id*. at 4. In support, it cites the Federal Railroad Administration's final rule regarding this definition which states (in part):

> While a reportable accident/incident could cover many incidents that relate to railroad operations, as proposed and as adopted in this final rule, the definition of "critical incident" includes only an accident/incident that results in a fatality, loss of limb, or a similarly serious bodily injury or a catastrophic accident/incident reportable to FRA under part 225 of this chapter that could be reasonably expected to impair a directly-involved employee's ability to perform his or her job duties safely. Accordingly, minimal injuries in the railroad workplace are not included in the scope of this definition. Similarly, *as explained in the analysis of the proposed definition of "critical incident" in the NPRM, "near miss" scenarios (i.e., situations which when seen in hindsight could have resulted in an accident, but did not) are not included.*

Critical Incident Stress Plans, 79 Fed. Reg. 16218-01 (March 25, 2014) (emphasis added). Plaintiff counters that this same ruling later leaves the door open for "near miss" cases to walk through. (Doc. 32, at 3). He cites (in part) the following language:

> As discussed thoroughly in the NPRM, while a "near miss" event could cause a negative stress-reaction in a train crew, research demonstrates that such reaction would typically only occur in situations where, for example, an individual had been involved in a prior similar incident which had catastrophic consequences or there were other issues at play. FRA believes that such "near miss" scenarios should be handled by each railroad on an individual basis, as the applicable science does not appear to support including "near miss" scenarios in the rule generally. Additionally, FRA agrees with AAR's comment that it would be difficult for railroads to comply with and for FRA to enforce the regulation regarding a "near miss," as a railroad would not necessarily have evidence of such an occurrence. Accordingly, although FRA is not revising the definition of "critical incident" to specifically exclude "near miss" events, FRA notes that the reference to part 225 in the definition makes clear that a single "near miss" event would not be considered a "critical incident" in accordance with this rule. *FRA further notes that this final rule does not prohibit a railroad from implementing a critical incident stress plan that provides flexibility for a railroad to determine on a case-by-case basis whether individual or multiple "near miss" scenarios should be considered a critical incident.*

Critical Incident Stress Plans, 79 Fed. Reg. 16218-01 (emphasis added).

Here, Plaintiff alleges that he suffered mental and emotional injuries as a result of the "near miss" incident. (Doc. 16, at ¶17). However, as Defendant points out, "near misses" are not included within the regulatory definition of a "critical incident" and thus, it was not *required* to include such in a critical incident stress plan. The passage cited by Plaintiff above does indeed leave the door open for a railroad to include "near misses" in its critical incident stress plan, however, the ruling clearly states that this is not a *requirement*. Rather, the regulation merely allows for "flexibility for a railroad to determine on a case-by-case basis whether individual or multiple 'near miss' scenarios should be considered a critical incident." 79 Fed. Reg 16218-01. Further, in so stating, the regulation notes that "a single 'near miss' event would not be considered a 'critical incident' in accordance with this rule." *Id*. Because the regulations do not consider "near misses" to be "critical

incidents", Defendant cannot be *per* se negligent for failing to do something the regulations did not require it to do. Relief could not be granted on this claim; therefore, the Court determines an amendment adding such a claim would be futile and denies Plaintiff's motion (Doc. 28) to add a negligence *per se* claim based on 49 C.F.R. § 272 *et seq*. *See* Fed. R. Civ. P. 12(b)(6); *see also Brown*, 622 F.3d at 574.

## CONCLUSION

For the reasons discussed herein, Plaintiff's motion for leave to amend is granted in part and denied in part. Plaintiff is GRANTED leave to amend his complaint to include a claim under 49 C.F.R. § 220.47. His request for leave to amend to include a claim based on 49 C.F.R. § 272 *et seq.* is DENIED.

**IT IS SO ORDERED.**

 s/ James R. Knepp II
United States Magistrate Judge